DAVIS *v.* GENERAL ELECTRIC SUPPLY CORP.

(*Nashville*, December Term, 1953.)

Opinion filed February 11, 1954.

JOSEPH L. LACKEY, of Nashville, for plaintiff.

GEORGE H. ARMISTEAD, JR., of Nashville, for defendant.

MR. JUSTICE PREWITT delivered the opinion of the Court.

This is a Workmen's Compensation case and there is no question but that the injury to the back of plaintiff arose out of and in the course of his employment.

After paying the plaintiff compensation benefits from October 8, 1951 to March 1, 1952, the defendant ceased payment, claiming that the plaintiff was a well man and

no longer was suffering injuries sustained to his back. On October 7, 1952, just short of one year, the plaintiff brought suit to recover additional compensation. So, the only question presented is whether or not the plaintiff had fully recovered when the defendant discontinued his payments on March 1, 1952. The plaintiff claims that he is totally and permanently disabled.

The trial court dismissed plaintiff's petition and this appeal in error resulted. Plaintiff testified that he was absolutely unable to do any work and had been in that condition since the date of his accident. It was stipulated that his wife would testify to substantially the same state of facts.

Plaintiff read the deposition of Dr. William F. Meacham to whom he went shortly before the date of the trial, for an examination. This physician found evidence that evidence of disability was manifest in that Davis walked in a bent or stooped posture. No X-rays were taken by this doctor and the plaintiff was examined by him for thirty or forty minutes only one time. He stated that Davis gave exclamations of pain from time to time. This witness stated that before he could reach any definite conclusion, he would have to examine Davis further.

Defendant took the deposition of Dr. Joseph G. Burd who specialized in orthopedic surgery. He was the personal physician of the plaintiff and examined him for the first time on December 4, 1951. He then found that plaintiff had some disability to his back and placed a cast on the plaintiff and saw him again on December 21 and again on January 7, 1952; and on both of these times he said the patient was doing all right. This doctor took X-rays and made a thorough examination of Davis and we quote the following from his testimony:

"* * * On January 7 he was doing all right and in February, I believe it was the first week in February, the cast was then removed and we felt that he was ready for light work. In May of 1952 we made a complete examination of this man. No positive or objective findings of low back or nerve root disability were found. That of course does not mean that the X-ray changes were in any way altered and in September of 1952 another examination resulted in no positive findings.

"Q. Doctor, at any time after you made an examination of the petitioner did you reach a conclusion as to whether or not he was able to resume his regular work? A. In this particular patient I felt that there was nothing unusual about his medical problem and that approximately three months from initiation of treatment he would probaby return to work and be able to do the same type of work as he did before he was injured.

*    *    *    *    *    *

"A. If you mean by his over-all condition, his history, what we saw on physical and X-ray or laboratory findings, no, the injury was not responsible; for, in my opinion, it takes time for a congenitally weak back to give a picture on X-ray such as this man presented. On the contrary, his physical findings, that is, definite tenderness, spasm, so-called signs of nerve root irritation had completely subsided, according to my notes, on May and September and—January 7th, my notes are not clear on that January '52—Yes, here it is. On January 28th, 1952, I believe at that time I thought he was ready for his regular duties."

Later on, the defendant had Davis examined by Dr. Benjamin Fowler of Nashville, an orthopedic specialist, and he testified that he examined him on October 22, 1952

and later on January 9, 1953, and following this examination the doctor said:

"We could find no cause for the patient's alleged disability."

He further testified that: "We could find nothing mechanically wrong with his back which we could attribute to any injury and we could find no reason for his disability and we did not feel that we had any chance of helping him with an operation."

He further testified that there was nothing to indicate any injury and that he could find nothing objectively wrong with the man.

We think there is material evidence to sustain the finding of the trial judge and furthermore, we think by the weight of the evidence, the plaintiff is not entitled to recovery.

This being the case, it results that the judgment of the lower court must be affirmed.